I concur to the extent that the main opinion affirms the trial court. I respectfully dissent to the extent that the main opinion reverses the trial court. The main opinion wrongly reverses the trial court for correctly instructing the jury on the law governing proof of a tradesman-lessee's intent in annexing structures to the lease-hold.
The issue is what structures built or affixed by the appellant-lessee are not subject to the provision of the lease that "[a]ny buildings and improvements erected on the leased property by the Lessee shall become the sole property of the Lessor at the expiration of the lease term." The main opinion holds that "trade fixtures" are not subject to the provision. The holding reads, "A tenant can remove trade fixtures at the end of a lease term even when the lease states that improvements andfixtures are not to be removed," 880 So.2d at 419 (emphasis in main opinion). This holding in and of itself seems correct.
The problem in the main opinion, however, is that it holds, in so many words, that a structure built or affixed by the lessee in furtherance of his trade or business qualifies as a trade fixtureirrespective of the "method of attachment," unless the lessee, at the time of building or affixing the structure, unilaterally intended for it to become a part of the lessor's property.880 So.2d at 422. Accordingly, the main opinion reverses the trial court for this paragraph of the jury instruction:
 "I will charge you that the intent of the party who installs property is essential in determining whether property was a business fixture. Intent may be determined by the expressed statements of a party either oral or written or by that party's conduct. In that regard, you may take into consideration the manner in which property was connected to the land, that is, to say whether the property was connected solely as a means of affixing or fastening the property in its place or whether the property was affixed in a manner with the intent of becoming a part of the land."
880 So.2d at 418 (emphasis in main opinion). This paragraph of the jury instruction, however, is immediately preceded by another critically pertinent paragraph of the instruction and is immediately followed by still another critically pertinent paragraph. The three pertinent paragraphs together read:
 "The defendants in this case were tenants because they were in possession of the property by virtue of a lease. A tenant may remove fixtures attached for the purposes of carrying on his trade or business. A tenant has this right regardless of the manner or degree to which an item is attached to the land or so long as the original purpose for placing the item on the land was for conducting a trade or business.
 "I will charge you that the intent of the party who installs property is essential in determining whether property was a business fixture. Intent may be determined by the expressed statements of a party either oral or written or by that party's conduct. In that regard, you may take into consideration the manner in which property was connected to the land, that is, to say whether the property was connected solely as a means of affixing or fastening the property in its place or whether the property was affixed in a manner with the intent of becoming a part of the land.
 "I further charge you that if you are reasonably satisfied from the evidence that any item of property removed by the defendant was placed on the premises to be used in connection with a trade *Page 426 or business, then the tenant would have the right to remove that property at the end of the lease even if you are reasonably satisfied that such item would otherwise qualify as improvements or fixtures provided, however, that a party may enter into a contract whereby he waives his right to remove a business or trade fixture." (Emphasis added.)
"In reviewing the trial court's instruction to the jury, this Court reads and considers the entire charge as a whole." Cooper Co. v. Lester, 832 So.2d 628, 641 (Ala. 2000).
In condemning this jury instruction, the main opinion relies almost entirely on Walker v. Tillis, 188 Ala. 313, 66 So. 54
(1914). So does today's appellant-lessee, the party which wins a reversal by the main opinion. Indeed, the appellant-lessee citedWalker no fewer than 40 times to the trial court, and citesWalker no fewer than 17 times in briefs to us. Yet, Walker
appears not only to allow but indeed to require a jury instruction to this very effect.
The property in Walker consisted only of "amusement devices" from an amusement park, 188 Ala. at 318, 66 So. at 55-57.Walker describes in detail the easy detachability of most of the devices and does not mention any damage resulting to the realty from the detachment. 188 Ala. at 319-20, 66 So. at 55-56.Walker imposes this restriction on trade fixture status:
 "The rule in regard to the removal of fixtures always requires that they be capable of removal without destruction of serious injury to the freehold, unless there is a contract to remove. But, as before stated, no general rule can be laid down for all cases, such removal depending upon the peculiar circumstances of the case."
Walker, 188 Ala. at 330, 66 So. at 59 (emphasis added).Walker further explains and holds:
 "It was held by Chief Justice Beasley (Erdman v. Moore, 58 N.J.Law, 461, 33 Atl. 958) that articles claimed to be fixtures in that case could not, by reason of mere physical connection with the land, be deemed such to the extent that they could not be removed by the tenant. All the courts seem to hold that the element of intention is the controlling factor in determining whether additions to real estate shall retain apparent indications that they are still personalty and become incorporated into the realty, and that each case must be controlled by the evidence of annexation and intention exhibited in that particular case, and that the difficulty arises in applying the rule.
 "Where annexation is of such a character as to indicate the purpose to make the chattels a part of the realty, they will be held to have become realty; but, where it does not indicate such an intent, the chattels do not become a part of the realty or `improvement,' within the meaning of the lease. It seems to be the settled rule that whenever such connections and additions are made solely as a means of staying or fastening the chattels in their places, to be used in the business of the tenant, without the intention to incorporate them into, or to make them a part of, the realty, they are not improvements of the demised premises within the meaning of such covenants of the lease."
Walker, 188 Ala. at 334-35, 66 So. at 60 (emphasis added). The jury instruction in the case now before us faithfully follows these holdings.
In the case before us, a number of the structures were buildings with concrete walls built integrally with the concrete floors and foundations, with the network of steel reinforcement bars (rebar) embedded within the concrete and extended from the foundations and flooring up into and *Page 427 
throughout the walls. A number of concrete silos were attached to concrete foundations with legs consisting of steel I-beams embedded in the concrete. The record contains abundant evidence that some of these structures were so annexed to the realty that the appellant-lessee could not remove them for any economic reuse but, rather, wantonly or even willfully destroyed them and left the rubble and wreckage on the lessor's premises to impede the use of the premises for any similar trade in the future.
This evidence presents jury questions whether, in the words ofWalker, supra, the "annexation [was] of such a character as to indicate the purpose to make the chattels a part of the realty" or, on the other hand, whether such "connections and additions [were] made solely as a means of staying or fastening the chattels in their places, to be used in the business of the tenant, without the intention to incorporate them into, or to make them a part of, the realty." 188 Ala. at 334-35,66 So. at 60. The jury instruction at issue in this case substantially covered this very law as stated by Walker. Of course, the facts before us are critically more favorable to the lessor than the facts in Walker, for the structures in this case were more realty themselves than chattels and were impossible to remove without gross damage to the lease-hold. As Walker says, "whatever was in the nature of buildings or support of buildings the defendant had not a right to remove." 188 Ala. at 336,66 So. at 60 (emphasis added).
Inasmuch, as the appellant-lessee has relied principally onWalker before the trial court and still relies principally onWalker before us, the cases from other states cited and quoted by the main opinion for a rule more favorable to the appellant-lessee hardly warrant any reversal. Thus, I respectfully submit that the judgment of the trial court should be affirmed in its entirety.